PER CURIAM.
This is a petition for review of an emergency rule promulgated by the Florida. Department of Corrections (Department) with respect to interviews with condemned prisoners. ■ ,
On June 11, 1979, the Department issued Emergency Rule 33 ER 79-1 which provides that when “a death warrant is issued áll regularly scheduled media interviews with death row offenders are cancelled until after such warrant is executed, expires or is stayed for a period that will definitely exceed its expiration date.” In support of its emergency rule the Department issued the following statement:
SPECIFIC REASONS FOR FINDING AN IMMEDIATE DANGER TO PUBLIC' HEALTH, SAFETY, AND WELFARE: Immediate promulgation of rule is necessary to maintain security of prison during period of time when execution is imminent.
REASONS WHY PROCEDURE USED IS FAIR UNDER CIRCUMSTANCES: The procedures affirmatively provide for interviews by the press of inmates under sentence of death until a point in time where more stringent security measures must be implemented in order to insure security of the prison.
SUMMARY: The emergency rule cancels regularly scheduled media interviews with death row inmates from the time that a death warrant is issued until that warrant is executed, expires, or is stayed for a period that will definitely exceed its expiration date.
DATE AND TIME OF EFFECTIVENESS: June 11, 1979.
A COPY OF THE EMERGENCY RULE MAY BE OBTAINED BY WRITING TO: Office of the General Counsel, Department of Corrections, 1311 Wine-wood Boulevard, Tallahassee, Florida 32301.
A summary of the rule was published in the Florida Administrative Weekly on June 15, 1979. On June 19, 1979, the Governor signed death warrants for inmates, Charles Proffitt and Robert Sullivan. The executions were scheduled for June 27, 1979. On June 19, 1979, the assistant city editor of the St. Petersburg Times (Times) requested permission of the Department for a reporter to interview Proffitt and Sullivan prior to their scheduled executions. Permission was denied pursuant to the foregoing emergency rule.
The Times filed a petition for review of the emergency rule in this court on June 21, 1979. On that date our court ordered the Department to file a response by June 25, 1979, and the Times has now filed a reply to that response. We are treating these proceedings on an expedited basis. See Fla.R. App.P. 9.300(c).
Since the principal place of business of the Times is within our district, we have jurisdiction of these proceedings. Section 120.68(2), Florida Statutes (1978 Supp.). Appeals may be taken directly, without exhaustion of administrative remedies, from emergency orders promulgated under Sec *306 tion 120.54(9)(a), Florida Statutes (1978 Supp.). Postal Colony Co., Inc. v. Askew, 348 So.2d 338 (Fla. 1st DCA 1977).
The statutory- authority for an agency such as the Department to issue an emergency rule is found in Section 120.54(9)(a), Florida Statutes (1978 Supp.), which reads as follows:
(9)(a) If an agency finds that an immediate danger to the public health, safety, or welfare requires emergency action, the agency may adopt any rule necessitated by the immediate danger by any procedure which is fair under the circumstances and necessary to protect the public interest, provided that:
1. The procedure provides at least the procedural protection given by other statutes, the Florida Constitution, or the United States Constitution.
2. The agency takes only that action necessary to protect the public interest under the emergency procedure.
3. The agency publishes in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. In any event, notice of emergency rules, other than those of educational units or units of government with jurisdiction in only one county or a part thereof, shall be published in the first available issue of the Florida Administrative Weekly. The agency’s findings of immediate danger, necessity, and procedural fairness shall be judicially reviewable.
The Times argues that the statement issued by the Department to justify the promulgation of its emergency rule consisted of nothing more than conclusions. The Department responds by submitting an affidavit of David H. Brierton, Superintendent of Florida State Prison, in which he recites the recent experience with the Spen-kelink execution and states various reasons why the emergency rule is necessary to insure security of the prison. Brierton’s affidavit explains that he discussed these considerations with other representatives of the Department and recommended the promulgation of the rule. An affidavit of Louie Wainwright, Secretary of the Department, states that having considered the recommendations of Superintendent Brierton and based upon his knowledge of the security needs, he determined the necessity of the rule in order to avoid a serious security problem at the prison.
The factual allegations and reasoning set forth in the affidavits may well have provided a sufficient predicate for the promulgation of the emergency rule. However, we note that the statute requires that the agency publish “in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety or welfare and its reasons for concluding that the procedure used is fair under the circumstances.” This simply was not done. The conclusionary statement of the Department which was issued at the time the rule was promulgated falls short of what the legislature requires to justify the issuance of an emergency rule. Hence, Emergency Rule 33 ER 79-1 must fall.
The voiding of the emergency rule leaves standing existing Rule 33-15.02(c) which provides:
Interviews with prisoners sentenced to death shall be conducted pursuant to administrative guidelines of the Department of Offender Rehabilitation, with final interviews permitted on the Wednesday preceding the execution date. Final statements by the condemned offender immediately prior to execution will be authorized at the offender’s option.
Since we have been advised today that the executions of both Proffitt and Sullivan have been stayed by federal court orders, we find it unnecessary to consider the Times’ request for an extraordinary order to permit an interview with these men tonight.
Likewise, in view of our disposition of this case we need not consider the constitutional questions raised by the petition. Our decision in this case should not be construed to prohibit the Department from promul *307 gating a new emergency rule following the requirements of law or from seeking a permanent rule pursuant to the normal rule-making procedures. Section 120.54(9)(c).
The petition for review is granted, and Emergency Rules 33 ER 79-1 issued by the Department is hereby declared invalid.-
GRIMES, C. J., and SCHEB and DAN-AHY, JJ., concur.